Loking-, J.,
delivered the opinion of the court:
The employment of the Louis D’Or and the National was upon contracts made between the United States and the owners *419 of those vessels respectively, i At the time of their employment the vessels were engaged in a general freighting business for their owners, and were in no way subject to the orders of the officers of the Government. There was' no appropriation of them, in the statute meaning of that word, and no action on the part of the United States was enforced against them. Their service was voluntary and rendered for a compensation, and the claim in each of these cases is correctly described by the learned counsel for the petitioners to be for a quantum meruit.
Upon the facts stated, these vessels]were not in “ the military service” of the United States as those words are used in the Acts ILarch 3,1849, (9 Stat. L., 414,) and its amendment of 1863, (12 Stat. L., 72,) for the employment of the vessels was to get a freighting vessel belonging to a private person off the rocks, and there was no war or enemy at the time and place. In the case of Gutman & Stuart v. The United States (18 Wall., 84, 9 C. Cls. R., 60) the Supreme Court held that transportation under a quartermaster’s contract of ¡military stores from one military post to another in time of war, buthn a peaceful locality and not attending any military expedition, was not a military service within the statutes referred to; and these vessels were not employed even for such service, for all the military stores were carried by the Doubloon, and none by these vessels or either of them. In these cases, therefore, there is no ground of action under the statutes specified.
And these vessels were nob in the possession or control of the United States, but were in the possession and control of their respective owners, by their agents the officers and crews of the vessels; and therefore the vessels were not in any way in the service of the United States, but were in the service of their respective owners, performing for thenUtheir parts of contracts which they had made with the United States.
And where a party contracts for the performance of a service by him for a price to be paid to him, the performance of the service is a condition-precedent to payment, and the costs and risks of performance are his unless otherwise expressly stipulated.
And in the case of the Louis D’Qr, the contract is in writing and cannot be extended beyond ‘its terms against the United States, and was for a specified service, viz, to proceed to the *420 Doubloon and assist her master to get her off the rocks, or, failing in that, to relieve him of part of his cargo. And in these respects the Louis D70r failed altogether. She rendered no service to the Doubloon, for she got upon the rocks before reaching the Doubloon, and after she was got off the rocks by the National she rendered no service to the Doubloon, but abandoned her and returned directly to Alexandria. And we think she is no more entitled to payment for services rendered than, if she had sunk in the harbor of Alexandria before leaving it.
Where the performance of a contract for services is so prevented by the fault of him who was to perform the service that no benefit whatever accrues to t,he other party, he who was in fault can claim nothing on a quantum meruit or any other equitable ground of relief. And the rule is necessarily the same where the performance is so prevented by a risk assumed by him who was to perform the service, for otherwise the risk and its consequences would be shifted from him'to whom it belonged ou to him who was insured against it by the contract, for the price to be paid to the contractor includes the premium for the risks he assumes.
Now, in this case the Louis D’Or was in the possession of the petitioner, and her navigation .was by him, and the risks of that belonged therefore to him, and, whether her running on the rocks was by fault or¡mísfortune, the consequences belong to him, and these prevented any benefit to the United States ; so that as to them there was a total failure of the consideration that induced their contract.
And where, as here, a plaintiff claims upon a contract for services, and at the same time shows that he did not perform the service, the burden is on him at the least to show affirmatively that the non-performance was not owning to any want of care and skill in him. And this the petitioner does not show, for the evidence is that under the same circumstances in which he ran on the rocks the National kept off of them and got him off of them, and, moreover, performed the very service he failed to perform.
The rule of the common law is, and has been for over two centuries, (2 Alleyn, 27,) “that where a party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable *421 necessity.” And here there was no “inevitable necessity,” for there was no violence of wind or wave, and no sudden or unforeseen peril, but only a low stage of the water belonging to the locality and season, and as patent to the Louis D’Or as to the National, and as familiar to the one as to the other, for the evidence is that both- were vessels employed in freighting on the river.
And in the modern action of assumpsit a claim upon a quantum meruit is for an equitable compensation for a benefit conferred ; and where no benefit is rendered no compensation is recoverable. In Farnsworth v. Garrard (1 Camp., 38) the action was assumpsit and the count was a quantum meruit for building a wall, and the defense was that the wall was so out of the perpendicular that it was liable to fall. And Lord Ellen-borough, in stating the nature of the action, said: “ This action is founded on a claim for meritorious service. The plaintiff is to recover what he deserves. It is therefore to be considered how much he deserves, or if he' deserves anything. If the defendant has derived no benefit from his services, he deserves nothing, and there must be a verdict against him.” And the verdict was rendered for the defendant on the ground ‘that he had received no benefits •, and there, as here, the work was for a thing to be done, i. e., for the job; there the work was ill done, here it was left undone.
If the petitioner is not entitled to recover on the facts of his case and the contract shown, he cannot recover on- the voucher, per se, for then that was given for debt which the United States did not owe, and the officer who gave the voucher had no authority so to do, and was not the agent of the United States for any such purpose.
The judgment of the majority of the court is that the petition be dismissed.
As to the National:
The claim for the National is only for her services in getting the Louis D’Or off the rocks, and for the damages sustained by the National in that; because the contract for the services of the National refers only to the Louis D’Or, and the National has been paid by the owners of the Doubloon for the services rendered to her.
Now, the United States had no pecuniary interest in or *422 responsibility for tbe Louis D’Or; sbe bad no military stores on board belonging to tbe United States, and, as bas been said, sbe was not in tbe posséssion or service of tbe United States, but in tbe possession and service of ber owners, and performing tbeir contract witb tbe United States; and on that contract tbe liability of tbe United States was to pay for services rendered, and nothing more. They were not in any way insurers of tbe Louis D’Or, and if sbe had not been gotten off tbe rocks, but bad perished upon them, tbe loss would not have been that of tbe United States, but of ber owners, for ic res perit suo domino.” And when tbe owners of tbe Louis D’Or undertook tbe service they contracted to perform, they assumed tbe risk of that service for tbe price to be paid for it.
Admitting, therefore, that tbe military officers at Alexandria, on tbe information they bad as to the peril of tbe Doubloon, and as to the military stores on board of ber, and in tbe circumstances in which they were placed, were justified in contracting for assistance to the Doubloon, it does not follow that they bad authority to bind tbe United States to pay for assistance to tbe Louis D’Or, and thus impose upon the United States a liability which belonged to tbe owners of tbe Louis D’Or, and which they bad assumed by tbeir contract.
We think they bad no such authority, and on tbe reasons stated we decide that tbe contract between Lieutenant Baltzell and tbe owner of tbe National, for tbe relief of tbe Louis D’Or, and tbe voucher given upon it, are of no legal validity, and not binding on tbe United States.
Tbe judgment of tbe court is that tbe petition be dismissed.